# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLORADO

Civil Action No. _____

ATLAS BIOLOGICALS, INC., a Colorado
Corporation
Plaintiff,

v.

THOMAS JAMES KUTRUBES, an individual;
PEAK SERUM, INC., a Colorado corporation;
and  PEAK SERUM, LLC, a dissolved Colorado
limited liability company
Defendants.

## COMPLAINT

COMES Now, Atlas Biologicals, Inc., a closely held Colorado corporation ("Atlas" or "Atlas

Biologicals"), and for its complaint against Thomas James Kutrubes, Peak Serum, Inc., and Peak

Serum, LLC, states as follows:

### I.   BRIEF INTRODUCTION

1.      This is an action at law and in equity for trademark and trade name infringement,

false designation of origin, injury to business reputation, unfair competition, and deceptive trade

practices arising under the Trademark Act of 1946, 15 U.S.C. §§ 1501 *et seq*.  This is also a

statutory and common law action under the laws of the State of Colorado for breach of fiduciary

duty, diversion of corporate opportunity, conversion and civil theft, state deceptive trade

practices and unfair competition, theft of trade secrets, and breach of contract.

2.     Thomas James Kutrubes is a shareholder and director of Atlas Biologicals. Kutrubes was employed by Atlas as its "National Sales Manager" until December 16, 2014, when he voluntarily tendered his resignation to pursue his unauthorized, competing business, Peak Serum, Inc.  Prior to his resignation, Thomas James Kutrubes engaged in a pattern of solicitation of Atlas' existing and prospective customers for the sale of competing products in breach of his fiduciary duties as both an employee and  director of Atlas and as an employee.  In numerous email solicitations, Kutrubes and Peak Serum used the EquaFETAL mark and Atlas' name and ATLAS and ATLAS BIOLOGICALS marks in connection with  the promotion of Peak Serum products, at times referring to Peak Serum's products as EquaFETAL  and at other times indicating that Defendants' products are EquaFETAL and/or ATLAS products offered under a different name.

3.     Prior to his departure from employment, Kutrubes also copied, downloaded, and/or emailed to himself a large quantity of Atlas' key documents and confidential and proprietary information, including trade secret information, for the purpose of converting it to his own use in his competing enterprise, Peak Serum.  Kutrubes attempted to conceal his theft of Atlas' property and proprietary and confidential information by deleting a large volume of files and email from his computer at Atlas' offices prior to his resignation.

4.     Defendants Thomas James Kutrubes ("Kutrubes") and Peak Serum, Inc., by deception and theft, secured Atlas Biological's Google, Inc. "Google+" account password, and converted that account to the use of Kutrubes' competing enterprise, Peak Serum, Inc.  In doing so, Kutrubes and Peak Serum, Inc. caused numerous existing consumer reviews of Atlas' products, including many references to Atlas and Atlas' trademarked and proprietary product

EquaFETAL® ("EquaFETAL") to be attributed to or associated with Peak Serum, Inc.  Peak Serum, Inc. is not the manufacturer of EquaFETAL products, is not an authorized seller of EquaFETAL or Atlas' products, nor is Peak Serum, Inc. connected or affiliated with, or endorsed, sponsored, or authorized by Atlas Biologicals in any way.  Kutrubes' and Peak Serum's actions are likely to cause confusion and to deceive consumers and the public regarding the nature and source of the parties' products and services, cause harm to the EquaFETAL, ATLAS and ATLAS BIOLOGICALS marks, and convey to the public and consumers a relationship between Atlas Biologicals and Defendants and their products that simply does not exist.

## II.  JURISDICTIONAL FACTS, VENUE

5.      Plaintiff Atlas Biologicals, Inc. ("Atlas"), is a closely held Colorado corporation with a principal office address of 2649 East Mulberry Street #A-3, in the City of Fort Collins, County of Larimer, State of Colorado.

6.      Defendant Thomas James Kutrubes ("Kutrubes"), is an individual who resides at 3602 Voyager Lane, in the City of Fort Collins, County of Larimer, State of Colorado.

7.      Defendant Peak Serum, LLC, is a dissolved Colorado limited liability company, with a principal office located at 3602 Voyager Lane, in the City of Fort Collins, County of Larimer, State of Colorado.  Defendant Thomas James Kutrubes organized Peak Serum, LLC, on October 31, 2014 (with a delayed effective date of January 1, 2015).  Kutrubes dissolved Peak Serum, LLC, on December 9, 2014, with a delayed effective date for the dissolution of January 2, 2015.

8.      Defendant Peak Serum, Inc., is a Colorado corporation, with a principal office located at 3602 Voyager Lane, in the City of Fort Collins, County of Larimer, State of Colorado.

Defendant Thomas James Kutrubes incorporated Peak Serum, Inc., on December 9, 2014 (with a delayed effective date of January 16, 2015).

9.      Defendants Peak Serum, Inc. and Peak Serum, LLC, are referred to hereinafter, collectively as "Peak Serum".

10.     This Court has subject matter jurisdiction under the Lanham Act, 15 U.S.C. § 1121 and Federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

11.     This court has personal jurisdiction over Defendants Kutrubes, Peak Serum, Inc., and Peak Serum, LLC, as the foregoing all reside within the District of Colorado.  The District of Colorado is a proper venue under 28 U.S.C. § 1391(b)(1) because all Defendants reside here and under § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district.

### III.  GENERALLY APPLICABLE ALLEGATIONS OF FACT

12.     Atlas is a closely held corporation formed in 1998 that specializes in producing high quality bovine serum-based products used for cell culture and diagnostic applications and medical, veterinary, and biological research.

13.     Bovine serum is a blood product derived from the bovine species that remains after red blood cells have been centrifuged out of the blood serum.

14.     Fetal bovine serum (FBS) is a blood serum product manufactured from blood drawn from a bovine fetus, which is typically collected at a commercial slaughterhouse as a byproduct of the commercial beef industry.  There is a high demand for FBS as a result of its

medical, veterinary, and biological research uses, and its pricing is therefore high.  Further, the price of FBS fluctuates widely with changes in the market for beef products.

15.     Atlas developed a product offered under the registered mark "EquaFETAL", which is a unique bovine serum product that meets the specifications of FBS, but in many respects is a superior product.  The EquaFETAL® product is a proprietary product which is bioequivalent to FBS and is collected, manufactured, and quality controlled by proprietary means.  Unlike FBS, the EquaFETAL® product is traceable, has greater lot consistency, and lower and more stable pricing.

16.     Atlas is the owner of the registered mark EquaFETAL,  U.S. registration number 3,307,832, with a first use in commerce date of December 13, 2005. The EquaFETAL mark was first licensed by Serum Solutions, Inc. to Atlas and later assigned to Atlas by Serum Solutions, a Colorado corporation and the original registrant of the mark.

17.     Atlas is also the owner and registrant of the registered marks:  FETAL+PLUS, U.S. registration number 4,086,021, with a first use in commerce date of June 8, 2010; and PROGENISERUM, U.S. registration number 4,354,970, with a first use in commerce date of August 31, 2012.  (Exhibit 6).

18.     Atlas has applied to the United States Patent and Trademark Office for registration of the marks , "FETAL CHOICE" under U.S. application serial number 86/372,131, and "FETAL SELECT", U.S. application serial number 86/502,135.

19.     Atlas also uses the unregistered marks ATLAS, ATLAS BIOLOGICALS, and FETAL RESERVE in offering and selling its products.

20.     Kutrubes is the owner of shares in Atlas, comprising a 7 % ownership interest.

21.     Kutrubes was a director of Atlas until he tendered his resignation as an employee and director on December 16, 2014.   Atlas refused his resignation, and terminated Kutrubes as a director and employee, for cause, on December 27, 2014.

22.     Kutrubes' relationship with Atlas began when he served as an intern from 2005 to 2006.  In 2006, Kutrubes became an employee of Atlas, initially serving as its regional sales manager.  Kutrubes was promoted to Atlas' "National Sales Manager" on November 9, 2012. Kutrubes voluntarily tendered his resignation from his position on or about December 16, 2014.

23.     As "National Sales Manager", Kutrubes' duties and responsibilities included, among many other things, understanding and adhering to company policies and procedures. Kutrubes signed a copy of his job description reciting this obligation and expectation on November 9, 2012, the date of his promotion.  (Exhibit 1).

24.     Atlas previously created, maintained, and distributed to its employees a confidentiality policy which contained specific provisions pertinent to Kutrubes' obligations to keep confidential certain information.  The confidentiality policy provided in part:

> In the course of employment, employees will be exposed to company confidential information.  Confidential information is defined as confidential and proprietary information of the company to which the general public does not have access. This will include customer lists and accounts, systems, procedures, policies, strategies, research, business plans, financial data, price lists, formulas, techniques, technology, confidential reports, computer software, contract forms, files and all other information, knowledge, or data of any kind or nature relating to the products, services, or business of the company. Confidential and proprietary information also includes work product of the employee during his or her employment with the company including emails, reports, memorandums, research and other similar documentation.

All information disclosed by Atlas Biologicals that is considered Confidential and/or Proprietary information, or is thereby created by Employee during the fulfillment of his/her duties and functions on behalf of Atlas, shall be considered to be Confidential and/or Proprietary in nature.  Any disclosure of such information is prohibited without the prior written authorization and approval from Atlas Biologicals.

(Exhibit 2, at §4.2).

25.     The confidentiality policy further specifically prohibited Kutrubes "…from accessing files, databases, and other company resources which they do not have authorization or access." (Ex. 2, at § 4.3.2).  Likewise, Kutrubes was prohibited from "…disclosing or duplicating confidential information to non-employees except where there is a business need to do so.  Upon termination of employment, the employee shall return all confidential information in the employee's possession."  (Ex. 2, at § 4.3.3).

26.     During the course of Kutrubes' employment, Kutrubes began soliciting business from existing and potential Atlas customers for a new business he formed, Peak Serum.

27.     In his solicitations, Kutrubes misrepresented Peak Serum as a "sister company" of Atlas, without the knowledge and consent of Atlas or its officers and directors, and otherwise falsely represented that Peak Serum was affiliated with Atlas.

28.     In soliciting business from existing and potential Atlas customers for his competing business, Peak Serum, Kutrubes sought to divert business from Atlas by encouraging those customers to purchase product from Peak Serum rather than Atlas using a variety of means.  In some cases Kutrubes misrepresented the existence and availability of both Atlas and Peak Serum

products or encouraged customers to limit their purchases of Atlas products until competing products were available from Peak Serum, Inc.

29.     Kutrubes, while soliciting business from existing and potential Atlas customers for his competing business, made representations about the source, origin, and nature of Peak Serum's products with the intent to create the false and misleading impression that Peak Serum's goods were manufactured by Atlas, affiliated with Atlas, connected or associated with Atlas, and/or endorsed, controlled, or approved by Atlas.

30.     Kutrubes, while soliciting business from existing and potential Atlas customers for his competing business, Peak Serum, infringed on Atlas' registered trademarks EquaFETAL and FETAL + PLUS along with Atlas' name and common law marks ATLAS and ATLAS BIOLOGICALS.

31.     During the course of Kutrubes' employment, Kutrubes procured by theft or conversion property of Atlas by downloading, emailing, or otherwise copying company data, documents, proprietary information, and trade secrets for his own use and for Peak Serum's use. Without limiting the generality of the foregoing, Kutrubes wrongfully and illegally took customer, supplier, and vendor lists, proprietary quality control manuals, product development standards, and other manuals, and contracts and contract templates, brochures, labels,  and marketing materials.

32.     Kutrubes, through theft, conversion, or other wrongful and illegal acts acquired from Atlas proprietary information related to the collection, processing, quality control, and manufacture of Atlas' products developed over more than a decade and at great expense.

Kutrubes and Peak Serum and have sought to replicate Atlas' proprietary products in the marketplace using Atlas' proprietary information.

### IV.    FIRST CLAIM FOR RELIEF – FEDERAL TRADEMARK INFRINGEMENT
### (Under 15 U.S.C. §§ 1114 and 1125(a))

33.    Atlas repeats and incorporates by reference the allegations of paragraphs 1 to 32.

34.    Atlas is the owner of the valid and subsisting federal trademark registration for the EQUAFETAL trademark, number 3,307,832, a copy of which is attached as Exhibit 3, the assignment of which is attached as Exhibit 4.  Atlas is also the owner and registrant of the registered marks:  FETAL+PLUS, U.S. registration number 4,086,021, with a first use in commerce date of June 8, 2010. (Exhibit 5).

35.    Atlas is also the owner of the unregistered marks ATLAS and ATLAS BIOLOGICALS.

36.    Atlas' bovine serum products, including but not limited to the EquaFETAL® and FETAL+PLUS products, are marketed and sold globally.  In offering and selling its products Atlas uses the marks ATLAS and ATLAS BIOLOGICALS.

37.    Atlas has invested tremendous time, effort and financial resources in developing and promoting its EquaFETAL and FETAL+PLUS trademarks as well as the ATLAS and ATLAS BIOLOGICALS marks in connection with the marketing and sale of Atlas' goods in interstate commerce.  The EquaFETAL trademark has become, through widespread and favorable industry acceptance and recognition, an asset of substantial value symbolizing Atlas, its quality products, and its goodwill.

38.     Consumers of bovine serum products recognize the EquaFETAL, FETAL+PLUS, ATLAS, and ATLAS BIOLOGICALS marks as a source indicator for Atlas.

39.     As evidenced by the valid and subsisting trademark registrations, the EquaFETAL and FETAL+PLUS marks are inherently distinctive.  The marks ATLAS and ATLAS BIOLOGICALS are also inherently distinctive and entitled to trademark protection under the Lanham Act.

40.     Peak Serum and Kutrubes wrongfully and illegally made use of Atlas' EquaFETAL, ATLAS, and ATLAS BIOLOGICALS marks by wrongfully and illegally obtaining access to Atlas' Google+ account and changing the name associated with that account to Peak Serum, Inc., thereby causing the foregoing marks to be displayed prominently and in association with the Peak Serum, Inc. corporate name when searching for Atlas Biologicals in a Google search.  These activities were carried out without Atlas' consent or knowledge.

41.     The activities in the foregoing paragraph continued for a period of weeks until Atlas regained control of its Google+ account with the assistance of personnel of Google, Inc.

42.     Kutrubes sent existing and prospective Atlas customers numerous emails which promoted Peak Serum products under the EquaFETAL, FETAL+PLUS, ATLAS, and ATLAS BIOLOGICALS marks or represented that his products are EquaFETAL® or other of Atlas' products offered under other names when in fact they are not.

43.     The wrongful and illegal attribution of the EquaFETAL, FETAL+PLUS, ATLAS, and ATLAS BIOLOGICALS name and marks with Peak Serum, Inc. have  created a likelihood that consumers will be confused or deceived as to the sources of the parties' products and any quality

assurance with resulting substantial and irreparable harm to Atlas' marks, reputation, and goodwill residing therein.

44.    Kutrubes' and Peak Serum's actions are knowing, intentional, willful, and carried out with clear intent to trade on the reputation and goodwill associated with Atlas' business and marks.

45.    Kutrubes' and Peak Serum's actions are knowing, intentional, willful, and carried out with clear intent to divert and harm Atlas' business and convert the reputation and goodwill associated with Atlas' names and marks.

46.    Kutrubes and Peak Serum have caused and are likely to continue to cause substantial injury to the Atlas' name and marks, and are entitled to injunctive relief, recovery of Defendants' profits, Atlas' damages, enhanced damages, costs and reasonable attorney fees.

### V.    SECOND CLAIM FOR RELIEF –  FALSE DESIGNATION OF ORIGIN AND FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. § 1125

47.    Atlas repeats and incorporates by reference the allegations of paragraphs 1 to 46.

48.    Kutrubes and Peak Serum made repeated representations about the source, origin, and nature of Peak Serum's products that have created the false and misleading impression that Peak Serum's goods are manufactured by Atlas, affiliated with Atlas, connected or associated with Atlas, and/or endorsed, controlled, or approved by Atlas when, in fact, they are not.

49.    Kutrubes and Peak Serum have made false representations, false descriptions, and false designations of origin regarding Peak Serum and Peak Serum's goods in violation of 15 U.S.C.

§ 1125(a), and such activities have caused, and unless enjoined, will continue to cause a likelihood of confusion and deception of members of the trade and the public and, additionally, injury and harm to Atlas' goodwill and reputation.

50.     Kutrubes and Peak Serum have caused and are likely to continue to cause substantial injury to the public and to Atlas, for which Atlas is entitled to obtain injunctive relief and to recover profits, actual damages, enhanced damages, and other damages as may be provided by statute.  The knowing, willful, and continuing nature of Defendants' conduct makes this an exceptional case for which Atlas is entitled to recover its costs and reasonable attorney fees.

### VI.     THIRD CLAIM FOR RELIEF—COLORADO COMMON LAW TRADEMARK AND TRADE NAME INFRINGEMENT

51.     Atlas repeats and incorporates by reference the allegations of paragraphs 1 to 50.

52.     Atlas' trademarks, EquaFETAL, FETAL+PLUS, PROGENISERUM, FETAL RESERVE, FETAL CHOICE, FETAL SELECT, ATLAS, and ATLAS BIOLOGICALS, and its trade names Atlas and Atlas Biologicals, are all trademarks and names used by Atlas in connection with its goods and services, which names and marks are inherently distinctive.

53.     Kutrubes and Peak Serum's unauthorized use of Atlas' trademarks and names for or in connection with the same or similar products and services infringes upon Atlas' common law trademark and trade name rights.

54.     As a result of Defendants' infringing conduct, Atlas has suffered irreparable harm to its marks and the reputation and goodwill associated therewith, and will continue to suffer irreparable harm, for which there is no adequate remedy at law.

### VIII.    FOURTH CLAIM FOR RELIEF—COLORADO COMMON LAW UNFAIR COMPETITION

55.    Atlas repeats and incorporates by reference the allegations of paragraphs 1 to 54.

56.    As its fourth ground for relief, Atlas alleges violation of Colorado common law unfair competition.

57.    Kutrubes and Peak Serum, among other things, have made unauthorized and infringing use of Atlas' trademarks and trade names, wrongfully and illegally took control of Atlas' Google+ account causing Atlas' information and favorable consumer reviews to be associated with Peak Serum clearly intending to benefit from the reputation and goodwill residing in Atlas, utilized Kutrubes' position as an employee, shareholder, and director of Atlas to gain access to Atlas' existing and prospective customers with the intent of and undertaking actions and deceptive communications to create confusion and misperception and thereby divert their business to Peak Serum.

58.    Kutrubes and Peak Serum's conduct as described above has led to confusion and deception of consumers with regard to the identity of the parties and the products offered by them.

59.    Kutrubes and Peak Serum have, or have sought to, pass off their goods as those of Atlas by virtue of use of Atlas' trademarks and trade names, adding to confusion on the part of the consumer.

60.    Kutrubes and Peak Serum have misappropriated and exploited Atlas' business values.

61.     Plaintiff has no adequate remedy at law for the damages caused by Kutrubes' and Peak Serum's common law unfair competition, conduct and activities, and has been irreparably damaged thereby.

### IX.  FIFTH CLAIM FOR RELIEF – MISAPPROPRIATION OF TRADE SECRETS UNDER THE COLORADO UNIFORM TRADE SECRETS ACT, C.R.S. §§7-74-101 *et seq.*

62.     Atlas repeats and incorporates by reference the allegations of paragraphs 1 to 61.

63.     Atlas' proprietary information concerning the collection, processing, quality control, and manufacture of its bovine serum products are trade secrets, as defined by C.R.S. § 7-74-102.

64.     Atlas' customer, supplier and vendor lists, sales data, and other confidential and proprietary information are trade secrets, as defined by C.R.S. § 7-74-102.

65.     Kutrubes and Peak Serum, by improper and deceptive means, took or retained possession of trade secrets of Atlas, including but not limited to, emailing, downloading, and copying those trade secrets from Atlas' computers and seeking information from other employees, while Kutrubes was an employee, shareholder, and director of Atlas.

66.     Kutrubes and Peak Serum misappropriated Atlas' trade secrets by acquisition, retention, disclosure and/or use of Atlas' trade secrets without Atlas' consent or knowledge.

67.     As a result of Kutrubes' and Peak Serum's misappropriation of Atlas' trade secrets, Atlas has been damaged and is entitled to injunctive relief pursuant to C.R.S. § 7-74-103, and damages pursuant to C.R.S. § 7-74-104.

68.     Kutrubes' and Peak Serum's misappropriation of Atlas' trade secrets was willful and malicious, entitling Atlas to its reasonable attorney fees.

## X.     SIXTH CLAIM FOR RELIEF—CONVERSION AND CIVIL THEFT PURSUANT TO C.R.S. § 18-4-405

69.     Atlas repeats and incorporates by reference the allegations of paragraphs 1 to 68.

70.     Kutrubes, while employed by Atlas, but acting for his own interest and for the interest of his competing enterprise, Peak Serum, acquired Atlas' property including documents, customer lists, vendor lists, supplier lists, and other information and documents that were the property of Atlas and copied, downloaded, or emailed to himself those documents and information.

71.     Atlas' documents and information are of substantial value and Atlas has a possessory or proprietary interest in those documents and information.

72.     Kutrubes and Peak Serum tortiously and/or knowingly obtained, retained, or exercised control over Atlas' documents and information without authorization of Atlas and/or by deceiving Atlas and/or its employees in order to obtain or remove them.

73.     Kutrubes and Peak Serum intended to deprive and/or tortiously deprived Atlas permanently of the value of its exclusivity in its own documents and information or used Atlas' documents and information in such a manner as to deprive Atlas of its use or benefit.

74.     Atlas is entitled to injunctive relief for the immediate return of its documents and information and to exclude Kutrubes and Peak Serum from the use of this information and/or

copies of any such documents or files.  Such relief is requested to effect the intent of the clause in C.R.S. § 18-4-405, stating "All property obtained by theft, robbery, or burglary shall be restored to the owner...."  This relief may be effected by temporary and permanent injunctive relief prohibiting Kutrubes and Peak Serum from the beneficial use of Atlas' customer lists, database, and documents and information.

75.     Atlas has been and will continue to be damaged by Kutrubes' conversion and theft of Atlas' property.  Pursuant to C.R.S. § 18-4-405, in addition to its other remedies, Atlas is entitled to recover treble damages, costs, and reasonable attorney fees.

**XI.     SEVENTH CLAIM FOR RELIEF—COLORADO CONSUMER PROTECTION ACT**

76.     Atlas repeats and incorporates by reference the allegations of paragraphs 1 to 75.

77.     Kutrubes and Peak Serum engaged in deceptive trade practices in the course of business in violation of C.R.S. § 6-1-105 and otherwise in violation of Colorado law.

78.     Without limiting the generality of the foregoing paragraph, Kutrubes and Peak Serum knowingly: (a) sought to pass off Peak Serum products as being Atlas products or otherwise affiliated with, controlled or approved by Atlas; (b) made false representations attributing the source, sponsorship, approval, or certification of Peak Serum goods to Atlas; and (c) made false representations that Peak Serum and Peak Serum's goods are affiliated, connected, associated with, or certified by Atlas.

79.     Kutrubes and Peak Serum's deceptive trade practices occurred in the course of their occupation and business.

80.     Kutrubes and Peak Serum's deceptive trade practices significantly impact the consuming public of bovine serum products as actual or potential consumers of Kutrubes and Peak Serum's products who have been deceptively led to believe that Atlas and its commitment to high quality products underlies the products being offered and sold by Peak Serum when in fact this is false; consumers acting in reliance on Atlas' good reputation and history of quality products in dealing with Peak Serum are unaware of the lack of this safety net and the risk being assumed to their detriment.

81.     In the course of its business, Atlas has been and will continue to be injured as a result of Kutrubes' and Peak Serum's deceptive trade practices.

82.     Atlas has suffered and will continue to suffer injury in fact to a legally protected interest as a result of Kutrubes' and Peak Serum's deceptive trade practices.

83.     Atlas has suffered and will continue to suffer actual damages as a result of Kutrubes' and Peak Serum's deceptive trade practices.

84.     Atlas is entitled to injunctive relief to prohibit Kutrubes and Peak Serum from continuing their deceptive trade practices pursuant to C.R.S. §§ 6-1-110(1) and 6-1-113(1).

### XII.     EIGHTH CLAIM FOR RELEIF -- BREACH OF FIDUCIARY DUTY; BREACH OF DUTY OF AGENT TO PRINCIPAL

85.     Atlas repeats and incorporates by reference the allegations of paragraphs 1 to 84.

86.     Kutrubes owed fiduciary duties to Atlas because of his status as an employee.

87.     Kutrubes owed fiduciary duties to Atlas because of his status as a director and shareholder of Atlas.

88.     Kutrubes owed a common law duty of loyalty to Atlas arising out of the agency relationship created by Kutrubes' employment by Atlas as "National Sales Manager".   *See e.g. Jet Courier Service, Inc. v. Mulei,* 771 P.2d 486 (Colo. 1989), following Restatement (Second) of Agency, § 387.

89.     Kutrubes breached his fiduciary duties to Atlas, including his common law duties of loyalty, through conduct including but not limited to, soliciting customers of Atlas to do business with his competing business Peak Serum during the term of his employment with Atlas.

90.     Kutrubes breached his fiduciary duties to Atlas, including, but not limited to, usurping corporate opportunities of Atlas.

91.     Kutrubes has continued to breach his fiduciary duties, including duty of loyalty, to Atlas by engaging in transactions which had their inception before the termination of the fiduciary duties or duty of loyalty to Atlas based on information obtained during that relationship.

92.     As a result of Kutrubes' breaches of fiduciary duties, including the duty of loyalty, to Atlas, Atlas has suffered and will continue to suffer damages, and is entitled to restitution and disgorgement of compensation and benefits paid to Kutrubes during his disloyalty and breach of fiduciary duty together with the profits of Kutrubes and Peak Serum resulting from Kutrubes' breach of his duties to Atlas.

## XI.     NINTH CLAIM FOR RELIEF – BREACH OF CONTRACT

93.     Atlas repeats and incorporates by reference the allegations of paragraphs 1 to 92.

94.     Kutrubes entered into a contract with Atlas governing the terms and conditions of his ongoing employment with Atlas.

95.     Kutrubes' job description included compliance with company policies and procedures.

96.     Kutrubes breached that contract by failing to adhere to company policies, including but not limited to those concerning the confidentiality and use of Atlas' confidential and proprietary information.

97.     Kutrubes further breached his contract with Atlas by acting in a manner contrary to the implied duty of good faith and fair dealing.

98.     Atlas suffered damages as a result of Kutrubes' breach of contract, in an amount to be proven at trial, together with restitution and disgorgement.

### XI.     TENTH CLAIM FOR RELEIF – ATTORNEY FEES

99.     Atlas repeats and incorporates by reference the allegations of paragraphs 1 to 98.

100.    Atlas is entitled, under the common law, to recover its reasonable attorney fees for Kutrubes' breach of fiduciary duty.

101.    Atlas is entitled to recover its reasonable attorney fees for Kutrubes' and Peak Serum's willful and malicious misappropriation of its trade secrets under C.R.S. § 7-74-105.

102.    Atlas is entitled to recover its reasonable attorney fees pursuant to 15 U.S.C. § 1117(a).

103.    Atlas is entitled to recover its attorney fees pursuant to C.R.S § 6-1-113(1)(b).

104.    Atlas is entitled to recover its attorney fees pursuant to C.R.S. § 18-4-405.

105.    Atlas, is therefore, entitled to an award of its reasonable attorney fees in this matter.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Atlas Biologicals, Inc., Plaintiff, prays that:

1.    Defendants Thomas James Kutrubes, Peak Serum, Inc., and Peak Serum, LLC, and all of their agents, officers, managers, employees, representatives, successors, assigns, attorneys, and all other persons acting by, with, through, or under authority from any of the Defendants or in concert or participation with any of the Defendants, be enjoined permanently, from:

    a.    Using the marks EquaFETAL, FETAL+PLUS, ATLAS, or ATLAS BIOLOGICALS in connection with Defendants' goods or services;

    b.    Using any trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendant's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to the trademarks, trade dress, service marks, names or logos of Atlas Biologicals, Inc.

    c.    Using any trademark, trade dress, service mark, logo, design or source designation of any kind on or in connection with Defendant's goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Atlas Biologicals, Inc., are sponsored or

      authorized by Atlas Biologicals, Inc., or are in any way connected with, controlled by, or related to Atlas Biologicals, Inc.

d. Using the proprietary information or trade secrets of Atlas Biologicals to produce bovine or equine serum based products, including EquaFETAL or blended or proprietary products based on Atlas' proprietary information nor trade secrets.

e. T o produce products containing EquaFETAL or EquaFETAL in combination with other products;

f. Contacting any customer or prospective customer in Atlas Biologicals, Inc.'s customer list or database;

g. To return to Plaintiff (and remove from Defendants access or possession) all documents, electronically stored information, databases, customer lists, vendor lists, which Defendant obtained from Plaintiff during the course of his employment and his service as a director.

2. Defendants be compelled to account to Plaintiff for any and all profits derived by Defendants from the sale or distribution of infringing goods as described in this Complaint, including prejudgment interest thereon;

3. Plaintiff be awarded damages for Defendant Thomas James Kutrubes' breach of fiduciary duty;

4. Plaintiff be awarded damages, restitution, or disgorgement equal to Defendant Thomas James Kutrubes' wages, salary, commissions, bonuses, and all other forms of compensation received from Atlas during his period of disloyalty;

5. Plaintiff be awarded damages for Defendants' misappropriation of Plaintiff's trade secrets, together with prejudgment interest thereon;

6. Plaintiff be awarded damages caused by all acts forming the basis of this Complaint, together with prejudgment interest thereon;

7. Defendants be compelled to disgorge to Plaintiff any and all profits derived by Defendants from Kutrubes' breach of fiduciary duties, breach of duty of loyalty, and other wrongful acts when such duties existed or from transactions which had their inception before those duties terminated;

8. Defendants be required to pay to Plaintiff the costs of this action and Plaintiffs' reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), C.R.S. §§ 7-74-105 or 6-1-113(2)(b), and under Colorado law for breach of fiduciary duty;

9. Based on Defendants' willful and deliberate infringement of Plaintiff's trademarks, and to deter such conduct in the future, Plaintiff be awarded treble damages as provided by 15 USC § 1117;

10. Based on Defendants' deceptive trade practices and bad faith conduct, to be awarded treble damages under C.R.S. § 6-1-113(2)(a)(III); and

11. Plaintiff be awarded its costs, reasonable attorney fees, and such other relief as the Court deems just and proper.

**JURY DEMAND: PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY ON ALL CLAIMS AND ISSUES SO TRIABLE.**

**EXEMPLARY DAMAGES: PLAINTIFF RESERVES THE RIGHT TO ASSERT A CLAIM PURSUANT TO C.R.S. § 13-21-102, PURSUANT TO THE PROCEDURE PROVIDED UNDER C.R.S. § 13-21-102(1.5)(a).**

Dated this <u>20</u> day of February, 2015.

<u>          /s/ John D. Root          </u>
John D. Root, No. 34709
LIND OTTENHOFF & ROOT, LLP
355 Eastman Park Drive, Suite 200
Windsor, CO 80550
Tel. (970) 674-9888
Fax (970) 674-9535
john@lorlegal.com

Address of Plaintiff:    2649 E. Mulberry Street #A3, Fort Collins, CO 80524